**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CINDY C.,

                              Plaintiff,          3:17-CV-513
                                                             (CFH)

    v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

**APPEARANCES:**                           **OF COUNSEL:**

LAW OFFICES OF STEVEN R. DOLSON     STEVEN R. DOLSON, ESQ.
126 North Salina Street, Suite 3B
Syracuse, New York 13202
Attorneys for plaintiff

U.S. SOCIAL SECURITY ADMIN.              ANDREEA L. LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for defendant

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## MEMORANDUM-DECISION & ORDER

Currently before the Court, in this Social Security action filed by Cindy C. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff Cindy C.'s motion for judgment on the pleadings and Defendant Commissioner of Social Security's motion for judgment on the pleadings. (Dkt. Nos. 9, 11.) For the reasons set forth

1

below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1955, making her 59 years old at her amended alleged onset date and 61 years old at the date of the ALJ's decision. Plaintiff reported completing one year of college. Plaintiff has past work as an administrative assistant and office worker, which was classified by the vocational expert ("VE") as a general clerk. At the initial level, Plaintiff alleged disability due to diabetes, osteoarthritis, high blood pressure, high cholesterol, high triglycerides, tendonitis in the left wrist and left rotator cuff, carpal tunnel syndrome ("CTS") in the right wrist, hypothyroidism, seasonal affective disorder, asthma, allergies, bursitis, hearing loss due to age, temporomandibular joint dysfunction, sleep apnea, diverticulosis, and a bone growth on her jaw.

### B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and Supplemental Security Income on October 20, 2014, alleging disability beginning March 15, 2013, and later amended her alleged onset date to October 20, 2014. Plaintiff's applications were initially denied on January 22, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing

2

before ALJ Kenneth Theurer on September 20, 2016. On September 27, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 7-21.)[1] On March 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1.)

### C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018. (T. 12.) The ALJ concluded that Plaintiff has not engaged in substantial gainful activity since October 20, 2014, the alleged onset date. (Id.) The ALJ determined that Plaintiff's arthritis and diabetes are severe impairments, but that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. at 12, 14.) Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (Id.) Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work. (Id. at 14.) Finally, the ALJ determined that Plaintiff is capable of performing past relevant work as a general clerk. (Id. at 17.) Therefore, the ALJ concluded that Plaintiff is not disabled.

### D. Arguments
#### 1. Plaintiff's Arguments

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

3

Plaintiff argues that the ALJ's decision is not based in substantial evidence because it does not properly apply the treating physician rule to Karen LaFace, M.D.'s September 2016 opinion. (Dkt. No. 9, at 5-11 [Pl.'s Mem. of Law). Plaintiff does not contend that Dr. LaFace's opinion should have been afforded controlling weight and acknowledges that some of the opinion is internally inconsistent. (Id. at 7). Instead, Plaintiff argues that the ALJ failed to explicitly consider required regulatory factors, including the frequency, length, nature, and extent of Dr. LaFace's treatment, the amount of medical evidence supporting the opinion, the consistency of the opinion with the remaining medical evidence, and whether the Dr. LaFace was a specialist. (Id.) Plaintiff argues that the ALJ, therefore, failed to give good reasons given for discounting the opinion. (Id. at 8.) Plaintiff contends that ALJ's reliance on Plaintiff's daily activities is not a good reason for discounting the opinion of a treating physician where there is inadequate explanation of how those daily activities and abilities would translate in a typical competitive workplace. (Id.) Plaintiff further argues that portions of Dr. LaFace's opinion are uncontroverted by any other medical source, and that it was improper for the ALJ to substitute his own opinion over the opinion of her treating physician in the absence of alternative medical opinion or non-medical evidence that was overwhelmingly compelling. (Id. at 9.)

Next, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because it fails to include non-exertional and environmental restrictions that are well established by acceptable medical sources. (T. at 9-11.) Plaintiff notes that Dr. LaFace opined several such restrictions, and that consultative examiner Gilbert Jenouri, M.D. opined mild limitations to bending and stair climbing as well as avoidance of

4

smoke, dust, and other known respiratory irritants. (Id. at 9-10.) Plaintiff also argues that this failure is not harmless because, although the vocational expert was asked a hypothetical question that included these limitations and the response was that Plaintiff could return to her past relevant work, the environmental restriction of no dust was not included in the hypothetical. (Id. at 10.) Plaintiff argues that the use of the term "avoid" as placing only an occasional restriction on exposure to respiratory irritants would run contrary to the jurisprudence of this district. (Id. at 10-11.)

### 2. Defendant's Arguments

Defendant makes several arguments in support of her general contention that the ALJ's RFC for light work is supported by substantial evidence. (Dkt. No. 11, at 6-18 [Def.'s Mem. of Law].) First, Defendant argues the ALJ's RFC finding is supported by Dr. Jenouri's opinion, Plaintiff's treatment notes, and Plaintiff's robust activities of daily living. (Id. at 8-13.) Specifically, Defendant argues that the ALJ properly evaluated the medical and non-medical evidence in the record and reasonably found that Plaintiff could do light work with no additional environmental limitations or a need for unscheduled breaks or absences. (Id. at 8.) Defendant notes the ALJ explained that he based his RFC finding, in part, upon Dr. Jenouri's opinion and argues that the Second Circuit has repeatedly held that the opinion of a consultative examiner like Dr. Jenouri may serve as substantial evidence in support of an ALJ's decision. (Id.) Defendant argues that Dr. Jenouri's mild limitations are consistent with light work, and that Dr. Jenouri notably did not include any limitations related to unscheduled breaks or multiple

5

absences per month, making it reasonable to assume that he did not find them necessary.  (Id. at 8-9.)

Defendant also argues that the portion of Dr. Jenouri's opinion relating to avoidance of respiratory irritants is not at odds with the ALJ's finding that Plaintiff can do her past relevant work as a clerk because this work does not require exposure to environmental irritants.  (T. at 9.)  Defendant further argues that there is no evidence that Plaintiff would have difficulty in an office setting, particularly in light of her daily activities, which included taking care of her dog, shopping at thrift stores and yard sales, cleaning, washing dishes, and doing laundry (exposing her to more environmental irritants) despite her asthma.  (Id.)  Defendant further cites the Dictionary of Occupational Titles, noting that the general clerk job does not involve exposure to weather, extreme cold, extreme heat, wetness/or humidity, atmospheric conditions, or radiation.  (Id. at 9-10.)  Defendant argues that, since Dr. Jenouri's opinion does not show Plaintiff lacked the RFC to perform her past relevant work, the ALJ's election to exclude Dr. Jenouri's environmental restriction from the RFC finding is not error.  (Id. at 10.)

Defendant points out that the ALJ explained he gave great weight to Dr. Jenouri's opinion because it was well-supported by his examination and consistent with Plaintiff's treatment notes, including those from Dr. LaFace, which revealed similarly modest findings.  (T. at 10)  Defendant highlights that the ALJ also explained that, despite alleging disabling arthritis, there was no evidence Plaintiff ever saw an orthopedic specialist with regard to this condition.  (Id. at 11.)  Defendant also argues that Dr. Jenouri's opinion was consistent with treatment notes showing Plaintiff's diabetes was

6

controlled without complications and Dr. LaFace's examination findings regarding Plaintiff's asthma as stable. (Id.) Defendant additionally argues that the ALJ's RFC finding is supported by the recommendation of Plaintiff's practitioners that she exercise, and, as the ALJ discussed, this recommendation was an indication that she should be more active, not less. (Id.) Defendant notes Plaintiff's report that she exercised regularly by walking "more" or "a lot" or "every day" and argues that this ability to exercise is consistent with light or medium work. (Id. at 11-12.) Defendant argues further that the ALJ appropriately considered Plaintiff's activities of daily living in determining that she could perform light work with no additional limitations and discussed how Plaintiff lived alone and did household chores. (Id. at 12.) Defendant also argues that Plaintiff's wide range of daily activities support the ALJ's RFC finding for light work. (Id. at 12-13.)

Next, Defendant argues that the ALJ also considered Dr. LaFace's more restrictive opinion and provided good reasons for affording it little weight. (T. at 13.) Defendant notes that, under the regulations relating to the evaluation of medical source opinions in effect at the time of the ALJ's decision, the opinion of a treating physician as to the nature and severity of an impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. (Id.) Defendant argues that the Second Circuit has held that the ALJ is not required to provide a slavish recitation of every factor under 20 C.F.R. §§ 404.1527(c), 416.927(c). (Id. at 14.) Defendant argues that the ALJ considered several important factors by acknowledging the treatment relationship between Dr. LaFace and Plaintiff when stating

Plaintiff's "treating doctor provided a disabling opinion," explaining why he did not find it persuasive, and considering the supportability and consistency of the opinion. (Id.) Defendant points out that the ALJ found Dr. LaFace's opinion was not supported by the objective evidence in the record, which contained modest musculoskeletal findings and normal respiratory findings. (Id. at 14-15.) Defendant also notes that the ALJ indicated Dr. LaFace's opinion was inconsistent with Plaintiff's activities of daily living. (Id. at 15-16.)

Further, defendant argues that Dr. LaFace's opinion contained internal inconsistencies, including that Plaintiff could sit for two hours at a time, but less than two hours in a workday. (T. at 16.) Defendant contends that Plaintiff offers no evidence to support her allegation that Dr. LaFace's opinion regarding her need for unscheduled breaks and absences is uncontroverted and that it is not clear why Plaintiff would need unscheduled breaks and multiple absences per month in light of her largely benign examination findings and robust activities of daily living. (Id. at 15.) Defendant also notes that Dr. Jenouri did not mention the need for such restrictions, and argues that the Commissioner may rely not only on what the record says, but also on what it does not say. (Id.) Defendant contends that Dr. LaFace's opinion was inconsistent with Dr. Jenouri's, which the ALJ discussed in great detail and found to be more persuasive. (Id. at 16.)

Finally, defendant argues that, in evaluating Dr. LaFace's treating source opinion, the ALJ discussed the most pertinent factors of 20 C.F.R. §§ 404.1527(c), 416.927(c), including treatment/examining relationship, supportability, and consistency. (T. at 16-17.) Defendant points out that Plaintiff does not argue Dr. LaFace was a specialist or

that she had familiarity with the disability program and notes Dr. LaFace was a primary care physician. (Id.) Defendant argues that the ALJ alluded to this fact when he stated Plaintiff did not see a specialist for her orthopedic complaints. (Id.) Defendant argues that Plaintiff has not shown she was harmed by the ALJ's failure to mention these other factors in his decision. (Id. at 17-18.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more

than one rational interpretation, the Commissioner's conclusion must be upheld. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Disability Standard

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States has recognized the validity of this sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thompson, 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. RFC & Opinion Evidence

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and

11

continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are considered to be qualified experts. See also Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating

sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In January 2015, Dr. Jenouri observed that Plaintiff had a normal gait, could walk on her heels and toes without difficulty, her squat was at 50 percent, she used no assistive devices, she needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 395.) She had elevated blood pressure, a limited range of motion in the lumbar spine, positive straight leg raise testing bilaterally with knee pain, limited range of motion of the hips, and limited range of motion in the knees due to pain. (Id. at 396.) She had full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally. (Id. at 395-98.) Dr. Jenouri diagnosed arthritis, bilateral knee and hip pain, hypertension, diabetes, and asthma. (Id. at 397.) He opined mild restrictions in walking, standing, and sitting for long periods, bending, stair climbing, lifting, and carrying, and indicated Plaintiff should avoid smoke, dust, and other known respiratory irritants. (Id.)

The ALJ indicated that the RFC was based on Dr. Jenouri's opinion and that this opinion was given great weight because it was based on Dr. Jenouri's examination of Plaintiff and his professional expertise. (T. 15.) He also indicated that Dr. Jenouri's opinion was consistent with treatment notes describing Plaintiff's diabetes as controlled and clinical findings of normal muscle tone, motor strength, and movement of all extremities as well as Plaintiff's reported ability to perform extensive daily activities. (Id. at 15, 499, 550.)

In September 2016, Dr. LaFace noted she had been treating Plaintiff since January 2014 and saw her approximately every three months. (T. 723.) She diagnosed hyperparathyroidism, diabetes, high blood pressure, sleep apnea, arthritis, hyperlipidemia, carpal tunnel syndrome, asthma, major depression, and hypothyroidism, and noted a fair prognosis, but indicated that she did not anticipate improvement. (Id.) Dr. LaFace opined that Plaintiff was capable of low stress jobs, but was unable to tolerate stress because stress caused an elevation in blood pressure and worsened depression. (Id.) She opined Plaintiff could walk 17 city blocks without rest or severe pain, sit two hours at a time (as long as she could move her legs) for a total of less than two hours; stand 15 minutes for about two hours total; needed to shift positions at will; needed to take unscheduled breaks approximately every two hours for 20 minutes; should elevate her legs at 80 degrees for about four hours or 50 percent of an 8-hour workday; could occasionally lift 10 pounds and rarely lift 20 pounds; occasionally look down/up and turn her head to the right/left; frequently hold her head in a static position; occasionally use her hands for grasping, turning and twisting objects; occasionally use her fingers for fine manipulations; and frequently use her arms for reaching. (Id. at 723-25.) Dr. LaFace also indicated Plaintiff's impairments were likely to produce good and bad days, she was likely to be absent 3-4 days per month, and her pain or other symptoms were occasionally severe enough to interfere with attention and concentration needed to perform even simple work tasks. (T. 725.) She noted that stress worsened Plaintiff's medical problems, including diabetes and blood pressure), and that Plaintiff had decreased hearing, arthritis pain, and CTS flares. (Id.)

The ALJ afforded Dr. LaFace's opinion little weight, noting the record did not support this opinion as there was little or no objective evidence of nearly all the impairments Dr. LaFace cited. (T. 16.) With regard to diabetes, the ALJ noted that the record was absent of any evidence other than that it was well-controlled, and with regard to arthritis, Plaintiff retained normal muscle tone, strength, and range of motion. (Id. at 16, 408.) The ALJ found that Dr. LaFace's opinion contrasted directly with Plaintiff's daily activities, including living alone, maintaining personal care, cleaning, cooking, shopping, attending appointments, using public transportation, walking nearly 20 blocks to the grocery store, crocheting, reading, and spending time with friends. (Id. at 16.)

Plaintiff argues that the ALJ's decision is not based in substantial evidence because it does not properly apply the treating physician rule. (Dkt. No. 9, at 5-9 [Pl.'s Mem. of Law].) The Court finds this argument unpersuasive. First, the ALJ provided sufficient reasons for affording little weight to Dr. LaFace's opinion, including that it was inconsistent with the record and Plaintiff's daily activities. (T. 16.) Inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion even from a treating physician. See Saxon v. Astrue, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing Stevens v. Barnhart, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); Otts v. Comm'r of Soc. Sec., 249 F. App'x 887, 889 (2d Cir. 2007) (summary order) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. §§

404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled).

Moreover, the ALJ's overall decision indicates that he properly considered the regulatory factors required of his analysis regarding the opinion evidence. (T. 15-16.) Within the explanation for the RFC determination, the ALJ indicated he had considered the opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 as well as SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Id. at 15.) The ALJ went on to discuss both Dr. LaFace's opinion and that of Dr. Jenouri in detail, giving adequate explanation for the weight afforded to each opinion. (Id. at 15-16.)

Plaintiff's case law citations do not require a contrary finding. Although Plaintiff relies on Gavazzi v. Berryhill, 687 F. Appx. 98 (2d Cir. 2017) (summary order) to argue that the ALJ improperly substituted his own opinion over the opinion of Plaintiff's treating physician in the absence of an alternative medical opinion or non-medical evidence that was overwhelmingly compelling, the Court does not find Gavazzi analogous to this case. (Dkt. No. 9, at 9 [Pl.'s Mem. of Law].) Rather than substituting his own opinion in the absence of alternative medical opinion or non-medical evidence that was overwhelmingly compelling, the Court's review of the record and the ALJ's decision indicates that the ALJ reasonably relied on Dr. Jenouri's opinion in determining Plaintiff's RFC and explicitly noted his reasons for affording great weight to Dr. Jenouri's opinion and little weight to Dr. LaFace's opinion. (T. 15-16.) Further, as a qualified expert in the evaluation of medical issues in disability claims, the ALJ was entitled to

rely on Dr. Jenouri's opinion. 20 C.F.R. §§ 404.1512(b)(1)(vi), 404.1513(c), 404.1527(e); Frye, 485 F. App'x at 487; Little, 2015 WL 1399586, at *9.

Finally, although Plaintiff argues that the ALJ's failure to include non-exertional and environmental restrictions -- including those opined by Dr. Jenouri -- in the RFC was reversible error, the Court notes that in formulating a claimant's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); Zongos v. Colvin, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). Indeed, "[t]here is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner." Kikta v. Comm'r of Soc. Sec., 15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) (citing Pellam v. Astrue, 508 F.App'x 87, 89 (2d Cir. 2013) (summary order)). Further, the Court's review of the record supports the ALJ's decision to omit these limitations. Therefore, for the reasons above, the Court finds that the RFC determination and the ALJ's consideration of the opinion evidence are supported by substantial evidence, and remand is not required.

### B. Step Four Determination

"[T]he Commissioner asks, at Step Four, 'whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform . . . her past work.'"

Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (quoting Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000)) (internal citations omitted). "[T]he claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82-62). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." McIntyre, 758 F.3d at 151 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983), citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)). If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Pardee, 631 F. Supp. 2d at 211 (citing Melligan v. Chater, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found that Plaintiff is capable of performing past relevant work as a general clerk as actually performed. (T. 17.) Plaintiff argues that the ALJ's decision is not supported by substantial evidence because it fails to include non-exertional and environmental restrictions that are well established by acceptable medical sources. (Dkt. No. 9, at 9-11 [Pl.'s Mem. of Law].) The Court finds this argument unpersuasive. As indicated in Section III A of this Memorandum-Decision and Order, the ALJ's consideration of Plaintiff's RFC and the opinion evidence is supported by substantial evidence. The ALJ was not obligated to accept any of Dr. Jenouri's opinion or Dr.

18

LaFace's opined limitations which he did not find credible. The ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See, e.g., Bliss v. Colvin, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); Petell v. Comm'r of Soc. Sec., 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). Further, this Court will not reweigh the evidence before the ALJ. See Warren v. Comm'r of Soc. Sec., 3:15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (Report and Recommendation adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016)) (quoting Lefford v. McCall, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

Because the RFC was supported by substantial evidence, the VE testimony that Plaintiff could perform her past relevant work with the RFC limitations is also supported by substantial evidence. Accordingly, the Court finds that the ALJ's Step Four finding

based on the VE testimony is supported by substantial evidence. Remand is therefore not required on this basis.

## IV.  CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**, and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision and Order on parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: September 5, 2018
Albany, New York

*[signature]*
Christian F. Hummel
U.S. Magistrate Judge